IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02881-MEH

DERRICK HUFFAKER,

      Plaintiff,

v.

NAPHCARE, INC., and
JAMES RICE,

      Defendants.

---

## DEFENDANTS NAPHCARE, INC. AND JAMES RICE, NP'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

---

Defendants NaphCare, Inc. and James Rice, NP (collectively "NaphCare Defendants") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the 42 U.S.C. § 1983 claims made against them.[1]

## <u>INTRODUCTION</u>

Plaintiff, Derrick Huffaker ("Huffaker"), alleges that Nurse Practitioner James Rice and NaphCare, Inc. ("NaphCare") were negligent and deliberately indifferent to his medical needs because they failed to provide adequate medical treatment to wounds on his leg caused by an inflammatory skin disease. (*See* ECF No. 1 at 1-2.). However, Plaintiff's medical records, which were incorporated by reference into the Complaint, unequivocally show that NP Rice corresponded

---

[1] This is a motion under Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's First and Second Claims against the NaphCare Defendants and is therefore exempt from the duty to confer under D.C.Colo.LCivR 7.1.

with the Grand Junction VA Medical Center (who had been providing care to Plaintiff's condition prior to his incarceration, hereafter the "VA") on three separate occasions to obtain information as to the best course of treatment. *Id*. at ¶¶ 32, 33. These records further show that NP Rice followed the VA's suggested course of treatment, including prescribing and administering Plaintiff the same medications that he had been given by the VA, and following the same method of wrapping and treating the wounds. Plaintiff also admits that this course of treatment was "appropriate." Doc. 4 at ¶¶ 75, 76. Thus, Plaintiff's own medical records demonstrate that Plaintiff has failed to allege that NP Rice knew of and consciously disregarded his medical condition. Because Plaintiff's claims are explicitly contradicted by his medical records, Plaintiff also cannot plausibly allege that Defendants caused him any harm. In the absence of facts which could permit the inference that the NP Rice and NaphCare breached any duty or caused the alleged injury, Plaintiff cannot maintain a negligence action or Fourteenth Amendment claim. Therefore, the Court should dismiss Plaintiff's claims.

## **FACTUAL BACKGROUND**

On September 19, 2021, Mesa Police Department officers arrested Plaintiff, who was then booked into the MCDF. (ECF No. 1 at ¶¶ 21, 22). Shortly after Plaintiff's arrival at the MCDF, Plaintiff told NP Rice that he suffered from Pyoderma Gangrenosum, a rare inflammatory skin disease secondary to sickle cell anemia. *Id*. at ¶ 28. In response, on September 20, 2021, NP Rice contacted medical providers from the Department of Veterans Affairs Western Colorado Health Care System to request Plaintiff's medication list "so [he] could disperse patient's medications while he is incarcerated." *Id*. at ¶ 32.  NP Rice also left his contact information in case the VA needed to reach him further. *Id*.

Later that day, NP Rice called the VA for a second time to ask how to best change the dressing on Plaintiff's wounds on his leg. *Id*. at ¶ 33. VA Nurse Winona Pulliam explained to Defendant Rice how to change Plaintiff's wound dressings and what materials to use to best care for the wounds. *Id*. at ¶ 34. She also faxed NP Rice the most recent wound care note from September 13, 2022. *Id*. Plaintiff also states that VA Nurse Pulliam noted that the call was approximately fifteen minutes long and implies that she provided a large amount of information and detail to NP Rice about how to treat Plaintiff's condition. *Id*. at 35-36. The VA made a third call to NP Rice to confirm that he had gotten the information needed to treat Plaintiff. *Id*. at 37-38. NP Rice stated that he had everything he needed to treat Plaintiff's condition. *Id*. at 37-39.

At this point, Plaintiff's allegations differ from the treatment documented within Plaintiff's medical records. Ordinarily, the Court's "function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991)). However, in addition to considering the complaint in its entirety, the court may consider documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); See *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997) ("the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity"). Because Plaintiff refers to and includes portions of his medical records in his Complaint as central to his claim, Plaintiff has invited the Court to consider the entirety of these

3

records in ruling on the 12(b)(6) motion. *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 (10th Cir. 2002). In doing so, the Court should look to the content of the records themselves, rather than the allegations made concerning the medical records. See *Droppleman v. Horsley*, 372 F.2d 249, 250 (10th Cir.1967) (holding the legal effect of an incorporated document considered on a motion to dismiss "is to be determined by [the document's] terms rather than by the allegations of the pleader'" in the complaint); *Zeligson v. Hartman–Blair, Inc*., 126 F.2d 595, 597 (10th Cir.1942)).

Here, Plaintiff's medical records completely refute Plaintiff's allegations. Plaintiff's Complaint alleges that the only medications that Plaintiff received were gabapentin and Tylenol; that NP Rice did not properly change Plaintiff's wound dressings; that NP Rice did not apply the proper medication mixtures to the wounds when changing the dressing; and that NP Rice did not use appropriate materials when dressing Plaintiff's wounds. *Id.* at 41-45. Plaintiff's contemporaneous medical records, however, unequivocally demonstrate that Plaintiff's allegations are false. Specifically, Plaintiff's medical records confirm that NP Rice and other NaphCare staff communicated with VA staff regarding Plaintiff's treatment during his incarceration, and that Plaintiff actually received timely and appropriate care continuing this course of treatment. Where Plaintiff's allegations contradict the medical records, the Court does not accept those allegations as true. *Johnson v. Correct Care Sols*., LLC, No. 17-CV-00782-RM-STV, 2018 WL 7372075, at *1 (D. Colo. Nov. 21, 2018), report and recommendation adopted, No. 1:17-CV-00782-RM-STV, 2019 WL 764602 (D. Colo. Feb. 21, 2019); *GFF Corp. v. Associated Wholesale Grocers, Inc*., 130 F.3d 1381, 1385 (10th Cir. 1997) ("[F]actual allegations that contradict ... a properly considered document are not well-pleaded facts that the court must accept as true."). Thus, because the factual

allegations forming the basis of Plaintiff's claims are contradicted by his own medical records, dismissal is appropriate.

## **LEGAL STANDARD**

### A. **F.R.C.P. 12(b)(6)**

Rule 12(b)(6) authorizes the Court to dismiss a claim when a plaintiff fails "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To be plausible, it must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, to state a claim, a plaintiff "must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Additionally, "threadbare recitals of the elements of a cause of actions, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The ultimate duty of the Court on a motion to dismiss is to determine if the plaintiff "sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### B. **Negligence**

Plaintiff first alleges that NP Rice breached his duty of care by failing to provide "adequate medical treatment and humane care while he was in the custody of the Mesa County Detention Facility." Doc. 4 at ¶¶ 71, 72. Applying Colorado substantive law, the elements of a negligence claim include the existence of a legal duty owed by the defendant, a breach of that duty, causation, and damages. *United Blood Servs. v. Quintana*, 827 P.2d 509, 519 (Colo. 1992). The question of

legal duty is a question of law. *Id.* at 519. "The court determines, as a matter of law, the existence

and scope of the duty—that is, whether the plaintiff's interest that has been infringed by the conduct

of the defendant is entitled to legal protection." *Metropolitan Gas Repair Serv., Inc. v. Kulik*, 621

P.2d 313, 317 (Colo. 1980). "[A] general claim for negligence in medical treatment arises when a

physician's care falls below the degree of knowledge, skill, and care used by other physicians

practicing the same specialty." *Gorab v. Zook*, 943 P.2d 423, 427 (Colo. 1997) (citation omitted).

"In Colorado a finding of negligence does not create liability on the part of a defendant

unless that negligence is a proximate cause of the plaintiff's injury." *City of Aurora v. Loveless*,

639 P.2d 1061, 1063 (Colo. 1981). "Proximate cause has two aspects: causation in fact and legal

causation." *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 985 (Colo. App. 2011). To establish

causation in fact, "a plaintiff must show either that (1) but for the defendant's alleged negligence,

the claimed injury would not have occurred, or (2) the defendant's alleged negligence was a

necessary component of a causal set that would have caused the injury." *Id*. (citation omitted). The

"but-for" test is "satisfied if the negligent conduct in a natural and continued sequence, unbroken

by any efficient, intervening cause, produce[d] the result complained of, and without which the

result would not have occurred." *Id.* (internal quotation marks and citation omitted). The second

test is used where causes other than the defendant's negligence "may be at play," *Id*. at 987, and

may be met if the plaintiff can show that the defendant's negligence was a "substantial contributing

cause" or a "substantial factor" in causing the damages. *Rupert v. Clayton Brokerage Co*., 737 P.2d

1106, 1112 (Colo. 1987)).

Additionally, Colorado statutory law requires plaintiffs to file a certificate of review to

pursue claims alleging professional negligence by a licensed professional:

> In every action for damages or indemnity based upon the alleged professional negligence of...a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each…licensed professional named as a party, as specified in subsection (3) of this section, within sixty days after the service of the complaint…against such person unless the court determines that a longer period is necessary for good cause shown.

Colo. Rev. Stat. § 13–20–602(1)(a). [2]

## C. Deliberate Indifference

Plaintiff then claims that NP Rice and NaphCare violated his Fourteenth Amendment rights under 42 U.S.C. § 1983 by providing inadequate medical care. (*See* ECF Doc. 4 at ¶ 9.) To state this Fourteenth Amendment claim, Plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). More specifically, to state a denial of medical care claim, a plaintiff must satisfy "both an objective and a subjective component." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir.2005). Under the objective component, the alleged deprivation must be "sufficiently serious" to constitute a deprivation of constitutional dimension. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In other words, the plaintiff must show that the medical need has been diagnosed by a physician as mandating treatment or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999); *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir.2000)

The subjective component requires the prison official to disregard the risk of harm claimed by the prisoner. *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009). The plaintiff must show

---

[2] At time of this filing, Plaintiff has not yet filed such a certificate certifying that counsel had consulted a person with expertise in the area of the alleged negligent conduct. Should Plaintiff fail do so in the allotted time period, "the failure to file a certificate of review in accordance with this section shall result in the dismissal of the complaint." Colo. Rev. Stat. Ann. § 13-20-602.

that the prison "official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Est. of Booker v. Gomez*, 745 F.3d 405, 430 (10th Cir. 2014). Stated another way, the defendant must have known that the plaintiff "faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotations omitted). This subjective standard is the equivalent of criminal recklessness, not mere negligence. *See e.g.*, *Farmer*, 511 U.S. at 836–37.

A medical provider's negligent failure to provide adequate medical care does not constitute unnecessary and wanton infliction of pain and therefore does not give rise to a constitutional violation. *Self*, 439 F.3d at 1230. An "inadvertent failure to provide medical care is not enough, nor does a complain that a physician has been negligent in diagnosing or treating a medical condition . . . state a valid claim of medical mistreatment under the [Fourteenth] Amendment." *Id.* (internal quotations omitted). Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the provider, even if grossly negligent, is not subject to second-guessing in the guise of a Fourteenth Amendment claim. *See, e.g.*, *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997). The subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). No claim of constitutional dimension is stated where a prisoner challenges only matters of medical judgment or otherwise expresses a mere difference of opinion concerning the appropriate course of treatment. *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir.1992); *Tyler v. Sullivan*, 83 F.3d 433, 1996 WL 195295, at *2 (10th Cir.1996) ("A difference of opinion as to the kind and timing of medical treatment does not rise to the level of an

Eighth Amendment violation.") (citing *Estelle*, 429 U.S. at 105–06; *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.1993)). Whether a particular form of medical treatment is indicated "is a classic example of a matter for medical judgment," and a physician's exercise of such judgment is insufficient to sustain a claim under the Eighth Amendment. Estelle, 429 U.S. at 107 (noting that medical decision to forego one form of treatment does not represent cruel and unusual punishment and at most is medical malpractice, with the proper forum being state court); see also *Perkins v. Kansas Dept. Corrections*, 165 F.3d 803, 811 (10th Cir.1999) ("[A] prisoner who merely disagrees with a ... prescribed course of treatment does not state a constitutional violation."); *Olson*, 9 F.3d at 1477 ("[a] difference of opinion does not support a claim of cruel and unusual punishment"); *Ledoux*, 961 F.2d at 1537 ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating [medical provider] ... is ... insufficient to establish a constitutional violation.") (citations omitted); *Henderson v. Secretary of Corrections*, 518 F.2d 694, 695 (10th Cir.1975) ("The prisoner's right is to medical care-not to the type or scope of medical care which he personally desires.") (citing *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir.1968)). Furthermore, allegations of negligence in diagnosing or treating a medical condition do not give rise to an Eighth Amendment claim. *Estelle*, 429 U.S. at 105; *Boles*, 361 Fed.Appx. at 15 (citing *Berry v. City of Muskogee*, 900 F.2d 1489, 1495–96 (10th Cir.1990)). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106.

## **ARGUMENT**

## I.    PLAINTIFF FAILS TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED AGAINST THE DEFENDANTS

Plaintiff's claims against NP Rice and NaphCare are deficient and should be dismissed because Plaintiff fails to adequately allege facts that would show any negligence on behalf of any Defendant. Plaintiff also fails to show that any individual NaphCare personnel acted with deliberate indifference to Plaintiff's serious medical condition. Thus, Plaintiff's claims should be dismissed.

### A.    Plaintiff's Medical Care Prior to and During his Incarceration at Mesa County Detention Facility

As a threshold matter, despite Plaintiff's allegations that he did not receive treatment for his pyoderma gangrenosum, Plaintiff's own medical records show that there is no question that NP Rice and other NaphCare nurses provided timely and appropriate care, and followed the instructions provided by the VA. Where a plaintiff's allegations contradict the medical records, the court does not accept those allegations as true. *Johnson v. Correct Care Sols.*, LLC, No. 17-CV-00782-RM-STV, 2018 WL 7372075, at *1 (D. Colo. Nov. 21, 2018), report and recommendation adopted, No. 1:17-CV-00782-RM-STV, 2019 WL 764602 (D. Colo. Feb. 21, 2019); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) ("[F]actual allegations that contradict ... a properly considered document are not well-pleaded facts that the court must accept as true."). Throughout Plaintiff's Complaint, he alleges that NP Rice failed to administer medications that he knew Plaintiff needed, failed to properly change the dressing on Plaintiff's wounds, failed to use the correct materials for dressing Plaintiff's wounds, failed to properly care for Plaintiff's wounds, failed to communicate with the VA Hospital regarding the care Plaintiff needed and the aggravation of his wounds, failed to ensure a sanitary environment for Plaintiff so that his wounds would heal appropriately, failed to escalate Plaintiff's care to a medical provider qualified to provide appropriate care for the wounds, and failed to schedule Plaintiff to see a

medical provider when it was apparent that Plaintiff's wounds were not being treated appropriately by the NaphCare nurses in the Mesa County Detention Facility. Doc. 4 at ¶¶ 67, 76, 104, 111. Plaintiff's allegations, however, are refuted by the treatment documented within his medical records.

*Plaintiff's Care Plan with the VA Prior to Incarceration*

In his Complaint, Plaintiff states that prior to his arrest and subsequent incarceration, he had been receiving treatment for his pyoderma gangrenosum from the Grand Junction VA Medical Center. Doc. 4 at ¶ 20. Specifically, the VA Wound Care Note from September 13, 2022 (approximately a week before he was booked into MCDF) included within Plaintiff's Complaint showed that Plaintiff had been receiving a "prednisone tablet crushed and mixed with triamcinalone and the placed on wounds with silver alginate and secured with mepilex" with "lidocaine prn during dressing changes" *Id.* The basis of Plaintiff's Complaint is that despite being provided treatment instructions, NP Rice and other NaphCare staff failed to provide adequate treatment. *Id.* at 28, 41, 42, 43, 44, 45, 76. A review of Plaintiff's NaphCare medical records, however, show that Plaintiff's claims are wholly false and without merit.

*Plaintiff's Treatment at Mesa County Detention Facility*

First, it is undisputed that after being told by Plaintiff that he suffered from pyoderma gangrenosum, NP Rice coordinated with VA medical staff on three separate occasions regarding his care. Doc. 4 at ¶¶ 30, 31, 32, 33, 36, 37, 39. Specifically, Plaintiff admits that on September 20, 2022, NP Rice contacted medical providers from the Department of Veterans Affairs Western Colorado Health Care System to request a medication list for Plaintiff "so [he] could disperse

patient's medications while he is incarcerated." Doc. 4 at ¶ 32. The VA faxed NP Rice the
medication list. *Id.* at 34; Ex. 1 at 42-48. Contrary to Plaintiff's allegations, Plaintiff's medical
records show that NP Rice ordered prednisone and triamcinolone acetonide to be administered
twice a day. Ex. 1, Derrick Huffaker's Medical Records at 2.These are the same medications that
Plaintiff had been receiving at the VA. *Id.*

Later that same day, NP Rice called the VA for a second time to ask how to change
Plaintiff's wound dressings and which materials to use. *Id.* On September 20, 2022, NP Rice
charted the following:

> Pt seen in medical for wound care. Pt has ulcers related to sickle cell disease.
> Assistance by Maddy (thanks very much). Dressings removed wounds cleaned with
> saline wash. lidocaine gel applied to open areas. To help relieve the pain of dressing
> change. Prednisone 30 mg used with TAC cream for each large wound and 3 smaller
> ones on the right internal ankle and two on left calf. The larger wounds one anterior
> ankle about 3 inches in diameter about 2-3 mm deep. macerated tissue. Posterior
> calf more of an oval about 3 inches long by 2.5 inches wide. All open areas covered
> with silver alginate then secured with mepalex and opsite.

Ex. 1 at 86. This entry clearly refutes Plaintiff's claims that he did not receive any treatment during
his incarceration.

On September 21, "per wound care orders from GRJ VAMC" (Grand Junction VA Medical
Center), Nurse Nikki Wallace measured and cleaned the wound bed with saline wash before
administering "prednisone tab 30mg crushed and mixed with triamcinolone cream applied onto
wound beds, then silver calcium alginate dressings followed by mepilex covering." Ex. 1 at 38-
39. Notably, NaphCare medical staff documented the wound bed as having "scant, non-
measurable" drainage. Ex. 1 at 16, 40. These entries directly refute Plaintiff's recounting in his
Complaint of his wounds having spilled "enormous amounts of blood" and that he "poured blood"
onto the ground. Doc. 4 at 46, 49.

12

A note from September 22 at approximately 2:30 p.m. again confirms that a NaphCare nurse followed the procedure provided by the VA:

> Wounds cleansed with NS, applied lidocaine gel per order of onsite provider, applied thin layer of prednisone tab 30mg crushed and mixed with triamcinolone cream applied onto wound beds, then silver calcium alginate dressings followed by mepilex on LLE and covered with rolled gauze to RLE, patient tolerated procedure well.

Ex. 1 at 86.

When comparing these notes from NaphCare medical staff to the September 13, 2022 wound note from the VA included in Plaintiff's Complaint, it is evident that NP Rice and other NaphCare staff did not delay or deprive him of any medical care, or deviate from Plaintiff's previous care plan with the VA. In addition, Plaintiff's medical chart shows that NaphCare staff created a specific entry documenting how to properly administer the treatment plan for pyoderma gangrenosum sent from the VA. Ex. 1 at 85. This page included instructions on how to clean the wounds, apply protective creams, apply the medications, how to dress the wounds, compression and wound wrapping, and how often to provide wound care. *Id.* This page even included links to video instructions demonstrating each step of the process. *Id.*

Further, Plaintiff's wound care records also demonstrate that Plaintiff received appropriate treatment during his incarceration. These notes show that NaphCare staff had received the VA instructions for Plaintiff's care, that Plaintiff was currently taking the antibiotic Bactrim, and that NaphCare medical staff were communicating with the wound care specialists to further coordinate Plaintiff's treatment. Ex. 2, *Wound Care Records* at 4-5. These documents serve as additional evidence that Plaintiff received appropriate treatment during his incarceration.

**B.    Plaintiff's Allegations Fail to State a Claim of Negligence**

Turning to the allegations contained within the Complaint, Plaintiff first alleges that NP Rice was negligent by breaching his duty to provide medical treatment under C.R.S. § 16-3-401 by "wholly fail[ing] to provide adequate medical care or humane treatment." Doc. 4 at ¶¶ 71, 72. Plaintiff claims that despite being "aware of the appropriate way to treat [his] wounds and what medications [Plaintiff] required due to calling and speaking with the VA" (Id. at ¶ 75), NP Rice failed to administer medications that he knew Plaintiff needed, failed to properly change the dressing on Plaintiff's wounds, failed to use the correct materials for dressing Plaintiff's wounds, failed to properly care for Plaintiff's wounds, failed to communicate with the VA Hospital regarding the care Plaintiff needed and the aggravation of his wounds, failed to ensure a sanitary environment for Plaintiff so that his wounds would heal appropriately, failed to escalate Plaintiff's care to a medical provider qualified to provide appropriate care for the wounds, and failed to schedule Plaintiff to see a medical provider when it was apparent that his wounds were not being treated appropriately by the NaphCare nurses in the Mesa County Detention Facility. Doc. 4 at ¶ 76.

Considering that Plaintiff's own medical records show that NP Rice provided the same course of treatment recommended by the VA – which was the "appropriate way to treat [his] wounds," according to Plaintiff – there are no facts that would support Plaintiff's claims that NP Rice was negligent. As discussed above, Plaintiff's own medical records unequivocally show that NP Rice administered medications recommended by the VA, properly changed the dressing on Plaintiff's wounds, and communicated with the VA regarding Plaintiff's condition. Ex. 1, Plaintff's medical records at p. 2, 42, 86. This alone is enough to support dismissal of Plaintiff's negligence claim against NP Rice.

14

As for Plaintiff's claims that NP Rice was negligent for failing to escalate Plaintiff's care "when it was apparent that [Plaintiff's] wounds were not being treated appropriately", this claim is unsupported by any argument outside of mere supposition. This is especially true considering that Plaintiff's medical records clearly show that Plaintiff was receiving what he has admitted is the proper treatment for his condition. Plaintiff has similarly failed to provide any non-conclusory allegations that the increase in the size of his wounds was due to deficient medical care.

As for NaphCare, Plaintiff alleges that it negligently supervised and trained its staff, failed to ensure the provision of appropriate care in the treatment of Plaintiff; for the negligent acts and omissions of its agents and/or employees. *Id.* at ¶ 78. Plaintiff provides no facts that would support his conclusory statements that NaphCare was negligent in the supervision and training of its staff. Addressing first the allegation of negligent supervision and applying Colorado law, negligent supervision is a direct tort. *Keller v. Koca*, 111 P.3d 445, 447 (Colo.2005). That is, it must be shown that the defendant had a duty and personally breached that duty, not merely that the agent or employee had and breached a duty, for which the principal or employer is vicariously liable. *Settle v. Basinger*, 2013 COA 18, ¶ 28, 411 P.3d 717, 723 (2013). Plaintiff makes one direct allegation against NaphCare: that it was "directly liable for breaching its duty to exercise reasonable care in its training and supervision of its nurses, agents, and employees acting on behalf of Mesa County in the Mesa County Detention Center in a manner that provided detainees with reasonable medical care." Doc. 4 at ¶ 83. This allegation is conclusory and unsupported by any facts, especially considering that the remainder of the allegations pertain to individual acts alleged by individual NaphCare staff which Plaintiff's medical records show to be false. *Id.* at ¶¶ 78-82.

Next, under the doctrine of vicarious liability, a person or entity may be liable for negligent acts committed by someone employed by another person or entity. *See Kiefer Concrete, Inc. v. Hoffman*, 193 Colo. 15, 18, 562 P.2d 745, 746 (1977); *Settle v. Basinger*, 2013 COA 18, ¶ 33, 411 P.3d 717, 724. By Plaintiff's own admission, NaphCare employees coordinated with the VA to continue Plaintiff's existing care plan. Plaintiff's medical records further show that NaphCare medical staff followed this care plan, and carefully documented the treatment. Again, considering that Plaintiff's medical records show that he received timely and appropriate care for his condition, there are no plausible or non-conclusory allegations that would show any negligent act for which NaphCare could be vicariously liable. As Plaintiff has failed to plead any facts that could support a finding of negligence on behalf of NaphCare, dismissal of Plaintiff's negligence claim is appropriate.

C.    **Plaintiff's Allegations Fail to State a Claim of Deliberate Indifference by Defendant Rice**

Plaintiff also alleges that NP Rice was deliberately indifferent to his medical condition by failing to administer appropriate medication and improperly dressing the wounds. Doc. 4 at ¶ 102, 111. Plaintiff's own medical records from the time he was incarcerated at the Mesa County Detention Facility show that NP Rice was not deliberately indifferent to Plaintiff's medical needs. Where a plaintiff's allegations contradict the medical records, the court does not accept those allegations as true. *Johnson v. Correct Care Sols.*, LLC, No. 17-CV-00782-RM-STV, 2018 WL 7372075, at *1 (D. Colo. Nov. 21, 2018), report and recommendation adopted, No. 1:17-CV-00782-RM-STV, 2019 WL 764602 (D. Colo. Feb. 21, 2019); *GFF Corp. v. Associated Wholesale*

*Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) ("[F]actual allegations that contradict ... a properly considered document are not well-pleaded facts that the court must accept as true.").

Here, Plaintiff alleges that NP Rice delayed or denied treatment for his pyoderma gangrenosum, Doc. 4 at ¶ 28. However, NaphCare medical records from the time Plaintiff was incarcerated within the Mesa County Detention Facility show that NP Rice (and other NaphCare medical staff) consistently provided timely and appropriate care, and followed the treatment plan provided by the VA. More specifically, his medical records show that NaphCare staff administered all the same medications that Plaintiff had been receiving while being treated by the VA, followed the specific instructions given by the VA regarding mixing the medications and applying them to the wound before wrapping, and complied with instructions given by the VA nurses when wrapping Plaintiff's wounds. The records also show that Plaintiff was administered antibiotics to prevent any infection. Thus, because Plaintiff's claims are directly contradicted by the medical records and are devoid of any factual support, they should not be considered by the Court. As these allegations form the basis of Plaintiff's Complaint, dismissal is appropriate.

In light of the medical records demonstrating that NP Rice appropriately treated his condition, Plaintiff cannot show that NP Rice was deliberately indifferent to his medical condition. Rather, NP Rice took affirmative steps to obtain information regarding Plaintiff's condition from collateral sources. He also ordered the appropriate medications and followed all wrapping protocols provided by the VA. Plaintiff's medical records further show that NP Rice passed this information along to other nurses and ensured that all subsequent treatment was in line with the instructions given by Plaintiff's other medical providers. These actions demonstrate that NP Rice, and all NaphCare medical personnel, at all times acted appropriately and within the standard of

care. Thus, because Plaintiff has failed to plead any factual allegations that would support his claims, dismissal is appropriate.[3]

*Plaintiff's Claims that Defendants' Failure to Treat His Condition Resulted in Disease Progression are Conclusory and Should not be Considered*

Finally, Plaintiff alleges that NP Rice and NaphCare's failure to provide treatment resulted in the wounds on his legs increasing in size. Doc. 4 at ¶ 103. Considering that Plaintiff's medical records show that the treatment he received while incarcerated was appropriate and substantially similar (if not identical) to that which he was receiving from the VA, and that Plaintiff admits that the course of treatment provided by the VA was the correct treatment, there are no facts that would support any of Plaintiff's allegations beyond mere conclusory allegations. Statements made without sufficient factual support are conclusory. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Conclusory allegations are "not adequate to state a claim that [they] were deliberately indifferent to [Plaintiff's] medical treatment." *Bingham v. Zavaras*, 2011 WL 2610124, at *10 (D. Colo. Oct. 9, 2014); see also *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996) (general conclusory allegations, without supporting factual averments, are insufficient to state a claim for deliberate indifference). Such conclusory and unsupported statements should be disregarded in ruling on the instant motion. See e.g., *Karsten v. Camacho*, 2013 WL 8335455, at *4 (D. Colo. Dec. 3, 2013) (finding plaintiff's allegations did not meet the subjective component of the

---

[3] Even if NP Rice had followed a different treatment regimen or if the treatment provided did deviate in some way from that provided by the VA, a disagreement in diagnosis or course of treatment does not give rise to a colorable deliberate indifference claim. *Estelle v. Gamble*, 429 U.S. 97, 104–06, (1976); *Perkins v. Kansas Dep't of Corr.,* 165 F.3d 803, 811 (10th Cir. 1999). Moreover, a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation. *Id*.

Similarly, though Plaintiff's medical records show that NP Rice and the other NaphCare providers were not negligent in treating Plaintiff, a negligent failure to provide adequate medical care, even one constituting medical malpractice, also does not give rise to a constitutional violation. See *Estelle* at 105–06, 97 S.Ct. 285.

deliberate indifference standard after disregarding his conclusory assertions of deliberate indifference), report and recommendation adopted, 2014 WL 161327 (D. Colo. Apr. 22, 2014); *Sorensen v. Rable*, 2009 WL 2982007, at *5 (D. Colo. Sept. 11, 2009) (recommending dismissal where the plaintiff made only conclusory allegations of deliberate indifference but no factual allegations to support a reasonable inference that the defendants knew of and disregarded a substantial risk of harm to plaintiff).

Even assuming the accuracy of Plaintiff's allegations that his wounds were larger in size when he presented to the VA on October 3, 2022, his medical records show that he was receiving prompt and appropriate treatment for his skin condition, and that the treatment provided was comparable to that which had been provided by the VA. Plaintiff has not made any claim that the course of treatment provided by the VA was in any way deficient; suggesting that the consistent care provided by NP Rice was similarly appropriate. Thus, there is no factual support for even the inference that any worsening of Plaintiff's wounds was caused by the treatment provided by NP Rice or any member of the NaphCare medical staff. This claim is conclusory and should not be considered.

## **REQUEST FOR FEES AND COSTS**

Generally, each party is required to bear their own litigation expenses, including attorney's fees, regardless of whether they win or lose. See *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). Congress, however, has authorized courts to deviate from this background rule in certain types of cases by shifting fees from one party to another. See *Burlington v. Dague*, 505 U.S. 557, 562 (1992). 42 U.S.C. § 1988 allows the award of "a reasonable attorney's fee" to "the prevailing party" in various kinds of civil rights cases, including suits brought under

§ 1983. Section 1988 allows a defendant to recover reasonable attorney's fees incurred because of a frivolous claim. *Fox v. Vice*, 563 U.S. 826, 836, (2011). Accordingly, § 1988 authorizes a district court to award attorney's fees to a defendant "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); see also *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Fox v. Vice*, 563 U.S. 826, 833 (2011). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1242 (10th Cir. 2022)

Here, Plaintiff's claims do not have any arguable basis in law or fact. Plaintiff's claims are based on the allegation that NP Rice and NaphCare did not provide Plaintiff with adequate treatment for his pyoderma gangrenosum. Doc. 4 at ¶¶ 76. In support, Plaintiff provides portions of his own medical records from the VA, argues that the treatment provided by the VA was the correct course of action, and that NP Rice and other NaphCare medical staff failed him by not following this course of treatment. However, as discussed at length above, there is no question that Plaintiff's medical records totally and completely refute Plaintiff's claims by showing that NP Rice and other NaphCare staff coordinated with the VA and provided the same course of treatment in a timely and appropriate manner.

Defendants do not take any position on whether the false statements contained within his Complaint were intentional or a mistake on behalf of Plaintiff or his counsel. That said, Plaintiff could have requested his medical records from NaphCare at any time, and thus had no barrier to confirming the truthfulness of his allegations prior to filing his Complaint.[4] Regardless, it is clear that Plaintiff or his counsel did not exercise due diligence by conducting a reasonable inquiry into

---

[4] Plaintiff has not made any allegation that his medical records were altered or fabricated in any way.

the allegations contained within the Complaint prior to filing this action. *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc*., 498 U.S. 533, 541 (1991); *White v. General Motors Corp., Inc.*, 908 F.2d 675, 679 (10th Cir.1990). Thus, "in addition to awarding fees and costs, the Court can sanction the attorney who signed the pleading, the party he represents, or both, and the sanctions may include payment of the other party's 'reasonable expenses incurred because of the filing ... including a reasonable attorney's fee.'" Fed.R.Civ.P. 11; *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 393 (1990); *White v. General Motors Corp*., Inc., 908 F.2d 675, 679 (10th Cir.1990). Plaintiff's allegations have no basis in law or fact, and are frivolous. Thus, Defendants are entitled to a reasonable attorney's fee under 42 U.S. § 1988, as well as any other relief the Court deems appropriate.

**CONCLUSION**

For the foregoing reasons, Plaintiff's claims against Defendants NaphCare, Inc. and James Rice should be dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Additionally, because Plaintiff's claims are wholly contradicted by the medical records, they are not entitled to the assumption of truth and have no arguable basis in law or fact. Thus, his Complaint is frivolous. Accordingly, Defendants request that the Court award a reasonable attorney's fee in accordance with 42 U.S. § 1988, along with any other relief it deems appropriate.

Dated:  October 24, 2024.              Respectfully submitted,

                                       */s/ Zachary Williams*
                                       Brenda S. McClearn
                                       Zachary Williams
                                       Hall Booth Smith, P.C.
                                       5445 DTC Parkway, Suite 900

Greenwood Village, CO 80111
Email: zwilliams@hallboothsmith.com

*Attorneys for NaphCare, Inc., and James
Rice*

## **CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on October 24, 2024, I electronically filed the foregoing with
the Clerk of Court using the CM/ECF system which will send notification of such filing to the
following:

James Roberts
PALMER PERLSTEIN
15455 Dallas Parkway, Suite 540
Dallas, Texas 75001
james@palmerperlstein.com

*Attorneys for Plaintiff*

/s/ Zachary Williams
Zachary Williams